IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-CT-3129-FL

| DAVID CRUMP, SR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| SUPERINTENDENT LAWRENCE SOLOMAN, et al., | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion for summary judgment (DE #65) filed by defendants Lawrence Soloman, Donna McKinnon, Danny Tolbert, Harold Persons, Eric Hunter, David Hinds, David White, and Cameron Myers. Plaintiff has filed a response and the matter is ripe for adjudication. For the reasons that follow, defendants' motion is granted.

## STATEMENT OF THE CASE

On September 24, 2007, plaintiff initiated this action pursuant to 42 U.S.C. § 1983 against defendants Solomon, McKinnon, Tolbert, Persons, White, Hunter, and Hinds. Plaintiff alleges that he has been unlawfully discriminated by defendants, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., because he has the human immunodeficiency virus ("HIV"). Accordingly to plaintiff, defendants transferred plaintiff and demoted him in custody because he is HIV-positive. Plaintiff also alleges that the defendants used excessive force against him in violation of the Eighth Amendment to the United States Constitution by keeping him in full restraints for a continuous period of thirteen (13) hours. Plaintiff seeks an injunction enjoining

defendants from placing him in restraints for long hours, and requiring his transfer to a different institution where plaintiff believed he would get better medical treatment. Plaintiff further requests $10 million in damages.

On November 6, 2007, this court conducted a frivolity determination and ordered that plaintiff's claims be allowed to proceed. Contemporaneously with this frivolity order, the clerk of court ordered that North Carolina Prisoner Legal Services ("NCPLS") investigate plaintiff's claims. After conducting an investigation, NCPLS notified this court on January 31, 2008, that it had provided advice and assistance to plaintiff and had determined that appointment of counsel was not required in this action.

Plaintiff continued to file a number of motions related to this action, including a motion to amend his complaint on January 25, 2008. Defendants filed an answer to the complaint on March 3, 2008. On May 9, 2008, this court entered an order granting plaintiff's motion to amend but denying his other then-pending motions.[1] Plaintiff's amended complaint added claims against a number of additional defendants, including a claim that defendant Myers acted with deliberate indifference to the temperature of plaintiff's shower and cell.[2] Upon defendants' motion for summary judgment, this court entered an order on March 30, 2009, dismissing all of the claims put forward in plaintiff's amended complaint except for the excessive force claim against defendants McKinnon, Hunter, Tolbert, White, Hinds, Solomon, and Person, and the claim against defendant

---

[1] Among plaintiff's additional motions denied by the court were a motion for a temporary restraining order filed November 19, 2007, a motion for a medical and mental health examination filed November 21, 2007, a motion to compel filed December 3, 2007, a motion for appointment of counsel on January 14, 2008, and a motion for a preliminary injunction and civil protective order filed April 9, 2008.

[2] Plaintiff's first amended complaint contained allegations against a number of defendants, since dismissed from this action, regarding sexual harassment, retaliation, excessive force, threats, and refusal to provide access to community-based programs.

2

Myers regarding the temperature of his showers and cell. The court also allowed plaintiff fifteen (15) days to amend his complaint to include any claims that he intended to present through his numerous letters to the court or through his response to defendants' motion for summary judgment.

In accordance with the court's order, plaintiff filed an amended complaint on April 13, 2009, as well as a declaration on April 22, 2009. This court conducted another frivolity determination on June 2, 2009, and determined that plaintiff's amended complaint supplemented his allegations in support of his claims that defendants McKinnon, Hunter, Tolbert, White, Hinds, Solomon, and Persons used excessive force in the course of transferring him from prison to prison. The court allowed plaintiff to proceed on these claims, as well as the claim against defendant Myers regarding deprivation of hot water and inadequate cell temperature. The court dismissed plaintiff's claim regarding the medical treatment for his staphylococcus infection, and declined to consider the declaration as raising any additional cause of action because it failed to comply with Rule 15(a) of the Federal Rules of Civil Procedure.

Defendants filed a motion for summary judgment on October 13, 2009.[3] In support of the motion, defendants attached affidavits of defendants Solomon, McKinnon, Tolbert, Person, Hunter, Myers, and White, as well as affidavits of non-parties Felix Taylor, Gordon Ipock, Phyllis Patterson, Grady Massey, and Patricia McEntire. Plaintiff filed a response on October 28, 2009.

## STATEMENT OF THE FACTS

The facts viewed in the light most favorable to plaintiff are as follows. On March 14, 2007, plaintiff was transferred to Pasquotank Correctional Institution. Plaintiff claims that he was placed

---

[3] Plaintiff, meanwhile, continued to file a number of motions seeking, among other things, appointment of counsel, compelled discovery, and a mental evaluation. This court denied these motions by orders dated October 15, 2009 and November 25, 2009.

in full restraints during the transfer, which took six hours. He states that he was forced to eat in the restraints and that he was unable to use the restroom because he could not unbutton his pants due to the pain from his neuropathy. Plaintiff says that he urinated on himself on the transfer bus as a result of his hypertension medication, suffering psychological trauma as a result.

Plaintiff states that he was again transferred on November 21, 2007, and that defendants kept him in full restraints for almost fourteen (14) hours, leaving him to urinate and defecate on himself. Plaintiff states that he was in severe pain during this time period because he suffers from neuropathy over ninety (90) percent of his body. Plaintiff further states that defendants were aware of his condition and disregarded it. He also claims that, as a result of the two transfers, he has suffered daily internal bleeding.

Finally, plaintiff asserts that, for two months, defendant Myers deliberately turned off the hot water each time he took a shower. He also claims that defendant Myers entered the mechanical unit and directed the warm air ventilation away from the block he was housed in at a time when the outside temperature was between 31 and 37 degrees. As a result, plaintiff claims, he suffered severe and unbearable pain and paralyzing aches and pains.

As relief, plaintiff requests monetary damages, that the court order that he not be placed in restraints in the future, and that he be transferred to another institution to obtain better medical care. Plaintiff also requests that he be placed in protective custody.

## DISCUSSION

A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v.</u>

4

Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

In support of their motion for summary judgment, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson v. Callahan, 555 U.S. __, 129 S.Ct. 808, 818 (2009).

B.   Analysis

   1.   Excessive Force Claim

Plaintiff alleges that defendants used excessive force against him when they forced him to sit in restraints for long periods during two transfers on March 14, 2007, and November 21, 2007. He claims that during the time he was in restraints he was in severe pain because he suffers from neuropathy and that the defendants knew of his condition and disregarded it. He also alleges that

5

he was unable to eat or use the restroom while in the restraints which caused him to urinate and defecate on himself, thereby resulting in emotional trauma.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on incarcerated individuals. Whitley v. Albers, 475 U.S. 312, 319 (1986). In an excessive force claim, such as that raised by plaintiff, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Although plaintiff is not required to show more than a *de minimis* injury to state a constitutional violation, "[t]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Wilkins v. Gaddy, 559 U.S. __, 130 S.Ct. 1175, 1178 (2010) (per curiam) (quoting Hudson, 503 U.S. at 7).[4]

Painful handcuffing, without more, does not constitute excessive force. In Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002), the plaintiff alleged that the officer had handcuffed her and dragged and pulled her to his car, causing her wrists to swell. The Fourth Circuit, in determining that this was not an unconstitutional use of excessive force, found that the circumstances justified the minimal level of force used by the officer. The court stated that "a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified, as here, in

---

[4] This court, in its March 30, 2009 order, relied in part on the seriousness of plaintiff's injury in making its determination that defendants Myers, Taylor, and Burton failed to use excessive force against plaintiff when they allegedly re-injured his left arm while he was in restraints and injured plaintiff his right arm while escorting him to the shower. Although this court cited the now-abrogated *de minimis* injury requirement of Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994) as part of its analysis in that order, it also considered the justification for defendants' use of that force in discussing the seriousness of plaintiff's injury. Moreover, the analysis set forth below applies with equal vigor to the court's earlier order, as both deal with defendants' use of restraints pursuant to prison policy to maintain order. The court therefore sees no cause for revisiting its earlier order in light of Wilkins.

6

effecting the underlying arrest." Id. Moreover, reasonable force applied in good faith does not become excessive force merely because the force aggravated a pre-existing condition of which the officer was not aware. Thomas v. Kincaid, No. 03-041-AM, 2004 WL 3321472, at *5 (E.D.Va. June 30, 2004) (citing Rodriguez v. Farrell, 280 F.3d 1341, 1353 (11th Cir. 2002)).

Plaintiff's claims here are similar to those of the plaintiff in Brown and Thomas in that his defendants applied reasonable restraint in accordance with established policies for maintaining order. According to the affidavits and documents submitted in support of summary judgment, it is Department of Corrections ("DOC") policy to place a prisoner in restraints during a transfer in order to maintain order and security during the transfer. (See Taylor Aff. ¶ 5 & Ex. A; Massey Aff. ¶ 5 & Ex. A.) Even if the officers were aware of plaintiffs neuropathy, as alleged, there is no evidence suggesting that defendants placed or kept plaintiff in restraints in a malicious, wanton, or sadistic manner. Instead, the evidence reveals that during the transport plaintiff had access to toilet facilities, was provided lunch, and allowed to rest for one hour. (See Taylor Aff. ¶¶ 4, 7.) In addition, there is no evidence that plaintiff was kept in restraints for longer than necessary to complete the transfer or that he was put in restraints punitively.[5]

Plaintiff has not demonstrated that the force was applied maliciously and sadistically to cause harm, as required to state a constitutional violation. Instead, the undisputed evidence presented by numerous affidavits shows that the alleged force by defendants was applied in a good-faith effort to maintain discipline during an inmate transfer. Accordingly, the use of restraints in this case does not

---

[5] The court notes that the evidence shows that defendants Solomon, McKinnon, Tolbert, Person, Hunter, White, and Hinds were not involved in the transport of plaintiff to Pasquotank. (See Massey Aff. ¶ 6.) Plaintiff is not alleging that these defendants are liable under *respondeat superior* or supervisory liability, and the evidence does not in any case support liability on this theory.

rise to the level of a constitutional violation, and defendants are entitled to qualified immunity on this ground.

2. Conditions of Confinement Claim

Plaintiff also alleges an Eighth Amendment claim against defendant Myers for deliberately tampering with the temperature of his shower water and his cell. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation marks omitted). The first prong requires the court to determine whether the deprivation was objectively sufficiently serious, while the second prong requires the court to determine whether the officials acted with a subjectively sufficiently culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Hudson, 503 U.S. at 9; see also Wilson, 501 U.S. at 298 ("[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."). In order to demonstrate such an extreme deprivation, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions, see Helling v. McKinney, 509 U.S. 25, 33-35 (1993). Inadequate heating and ventilation or unsanitary living conditions may be so egregious as to reach constitutional magnitude under the Eighth Amendment. See, e.g., Wilson, 501 U.S. at 304.

8

Plaintiff's claim falls short of the requirements to demonstrate an Eighth Amendment violation. Plaintiff claims that from December 18, 2008, through February 16, 2008, defendant Myers would turn off the hot water each time he would shower, thereby forcing him to take a cold shower. Although plaintiff states that he complained of this to Patricia McIntyre, Correctional Unit Manager at Marion Correctional Institution, she states in her affidavit that she does not recall any specific complaints that plaintiff made to her regarding defendant Myers requiring him to take cold showers. (McIntyre Aff. ¶ 4.) She further states that no one other than the unit sergeant has access to the water closet and that staff cannot control the shower temperatures at Marion. (Id. ¶ 5.) Finally, McIntyre states that although there were some problems with the water temperature controls while plaintiff was housed at Marion, inmates from plaintiff's wing were taking to another wing to shower until the problem was fixed. (Id. ¶ 6.)

Plaintiff also claims that defendant Myers entered the mechanical unit and redirected the air vents to defer the warm air from his cell. He states that the cold temperature of his cell exacerbated his neuropathy and caused him to suffer severe and unbearable pain. Despite these claims, defendants presented an affidavit of Gordon Ipock, Heating Ventilation Air-Conditon ("HVAC") Supervisor at Marion, stating that air temperatures are uniformly applied to all cells and that neither defendant Myers nor any other correctional officer has access to temperature controls. (Ipock Aff. ¶¶ 4, 6.) The affidavit further states that the HVAC system at Marion is not even capable of providing controlled air flow to an individual cell. (Id. at ¶ 4.) Although there were some problems with the HVAC system at Marion while plaintiff was housed there, temperatures were manually controlled to establish adequate temperatures throughout the housing blocks during the time the HVAC system was being replaced. (Id. at ¶ 5.)

Given the evidence before the court, the court concludes that plaintiff has failed to satisfy the subjective prong of the Eighth Amendment test, which requires a showing that defendant Myers acted with deliberate indifference. See Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).[6] The undisputed evidence demonstrates that defendant Myers did not have access to either the water or the HVAC temperature controls, and that the HVAC system at Marion is not capable of providing controlled air flow to an individual cell. Although there were problems with the water temperature valves and HVAC system while plaintiff was housed at Marion, the evidence shows that appropriate steps were taken to remedy the situation. Moreover, there is no suggestion that Myers was somehow responsible for those problems. Accordingly, the evidence does not demonstrate a claim of deliberate indifference and defendant Myers is entitled to qualified immunity from this claim.

## CONCLUSION

For the foregoing reasons, defendants are entitled to qualified immunity on plaintiff's remaining claims. Accordingly, defendants' motion for summary judgment (DE #65) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the __ day of May, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[6] "[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard [an] objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (citing Farmer, 511 U.S. at 837).